538 A.2d 317

Steven J. BROWN

v.

STATE of Maryland.

Tyrus T. BROWN

v.

STATE of Maryland.

Nos. 850, 851, Sept. Term, 1987.

Court of Special Appeals of Maryland.

March 4, 1988.

Sherrie B. Glasser, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellants.

Beverly Peyton Griffith, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, Warren B. Duckett, Jr., State's Atty., for Anne Arundel County and Phillip Caroom, Asst. State's Atty., for Anne Arundel County, on the brief), Annapolis, for appellee.

Argued before ALPERT, BLOOM and KARWACKI, JJ.

KARWACKI, Judge.

A jury in the Circuit Court for Anne Arundel County convicted Steven J. Brown and Tyrus T. Brown, appellants,

of the theft of several typewriters and word processors from the Arundel Office Equipment Store on April 18, 1986. The court sentenced each appellant to five years imprisonment, suspended their sentences, and placed each appellant on probation for a period of five years. In this appeal from those judgments, appellants contend that the trial judge erred when he precluded defense counsel from cross-examining the State's primary witness about her arrest on unrelated charges prior to her testimony at appellants' trial. Appellants also contend that certain testimony of a second witness was irrelevant and prejudicial, but we will not address that contention because we agree that the trial court abused its discretion to control the limits of appellants' cross-examination.

Prior to calling Vanessa Coleman, the State's sole witness as to the criminal agencies of the appellants, the State moved *in limine* that defense counsel not be allowed to cross-examine her concerning her arrest on May 15, 1986. The testimony at the hearing on that motion, conducted out of the presence of the jury, developed the following facts.

On May 15, 1986, Officer Steven Dunn of the Anne Arundel County Police Department observed two women fleeing from the W.R. Blair Jewelry Store in Annapolis. Officer Dunn apprehended Vanessa Coleman and recovered a ring that had been stolen from the jewelry store. The second woman fled from the scene.

After her arrest, Ms. Coleman attempted to explain her participation in the theft of the ring, claiming that the second woman, whom she identified as Sheila Jones, used a shotgun to force her to commit the crime. In support of her claim, Ms. Coleman told Officer Dunn that the shotgun could be found at the home of her boyfriend, Tony Brown, hidden under his bed. Although Officer Dunn hadn't noticed Sheila Jones in possession of a shotgun, he nevertheless went to the residence of Tony Brown after Vanessa Coleman had been taken to Southern Police Station. Sheila Jones was not present at appellants' house when Officer Dunn arrived, but a shotgun was located under the bed that

Ms. Coleman had described. Officer Dunn seized the shotgun.

Later that evening, while Officer Dunn was preparing the charges that were to be filed against Ms. Coleman, she volunteered further information concerning Tony Brown and his brothers, the appellants in the instant case. She told Officer Dunn that while she was at the Brown residence approximately one month earlier, appellants, along with their brother, Tony,[1] broke into the Arundel Office Equipment Store and stole several typewriters. She further claimed that she accompanied the Brown brothers when they attempted to sell the typewriters to an unidentified individual who later purchased them.

On receipt of this information, Officer Dunn notified Detective James K. Ritchie of the Anne Arundel County Police Department, who was investigating the April 18, 1986, theft from the Arundel Office Equipment Store. Ms. Coleman repeated her statements to Detective Ritchie. When she finished, Detective Ritchie told her that he would bring her cooperation to the attention of the State's Attorney. Ms. Coleman subsequently reduced her statements to writing. The charges filed against Ms. Coleman in connection with the theft of the ring were *nol prossed* prior to her testimony at appellants' trial.

Detective Ritchie stated that despite his promise to do so, he never spoke with the Assistant State's Attorney responsible for the prosecution of the theft from the W.R. Blair Jewelry Store. Richard Duden, the Assistant State's Attorney assigned that prosecution, testified that he could not recall the reason why he *nol prossed* the charges against Vanessa Coleman.

The court granted the State's motion *in limine,* and ordered defense counsel not to question Ms. Coleman about her arrest or the circumstances which surrounded the inculpatory statements she made to the police. Coleman's testi-

---

1. Tony Brown died prior to appellants' trial.

mony was the only evidence offered at trial that linked appellants to the theft with which they were charged. When cross-examined, she testified that she came forward to the police with her statement because (1) Tony Brown had "brutalized" her and (2) she wanted to stop crime. When she was asked why she did not come forward with her statement until approximately one month after the theft from the office equipment store, Coleman testified that Tony Brown had threatened to shoot her. Coleman denied that anyone had offered her anything in return for her testimony against appellants.

Appellants contend that their right to cross-examine Vanessa Coleman was improperly restricted because they were prevented from questioning her about a possible motive for her testimony against them—avoiding prosecution for the theft for which she was arrested on May 15, 1986. The State responds that the jury was presented with every item of information relevant to Vanessa Coleman's credibility because Ms. Coleman testified that she was motivated by a desire to "get even" with Tony Brown and a desire to "stop crime". Further, the State argues that the cross-examination of Coleman was properly limited because no evidence was presented to establish the existence of an agreement that the charges against Coleman would be *nol prossed* in return for her testimony. Finally, the State asserts that, because the charges against Vanessa Coleman had been *nol prossed* prior to appellants' trial, she could not have had a present expectation to gain anything from the State in return for her testimony.

The Sixth Amendment right of confrontation guaranteed to a state criminal defendant by the Fourteenth Amendment includes the right to cross-examine about matters which affect a witness' bias, interest, or motive to falsify. *Delaware v. Van Arsdall,* 475 U.S. 673, 678–79, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674, 683 (1986); *Davis v. Alaska,* 415 U.S. 308, 316–17, 94 S.Ct. 1105, 1110, 39 L.Ed. 2d 347, 354 (1974); *Hopper v. State,* 64 Md.App. 97, 104, 494 A.2d 708 (1985); *Robinson v. State,* 47 Md.App. 558,

573, 425 A.2d 211 (1981); *Hoover v. State of Maryland,* 714 F.2d 301, 305 (4th Cir.1983). This statement is equally true of the right of confrontation guaranteed by Article 21 of the Maryland Declaration of Rights. *Hopper v. State, supra,* 64 Md.App. at 104, 494 A.2d 708. Nevertheless, the Confrontation Clause does not extinguish the wide latitude that a trial judge retains to impose reasonable limits on cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. *Delaware v. Van Arsdall, supra,* 475 U.S. at 679, 106 S.Ct. at 1435, 89 L.Ed.2d at 683; *Lewis v. State,* 71 Md.App. 402, 410, 526 A.2d 66 (1987); *Fletcher v. State,* 50 Md.App. 349, 356–57, 437 A.2d 901 (1981). But a trial judge may not exercise his discretion to control the limits of cross-examination until the constitutionally required threshold level of inquiry has been afforded the defendant. *United States v. Christian,* 786 F.2d 203, 213 (6th Cir.1986); *Hoover v. State of Maryland, supra,* 714 F.2d at 305; *United States v. Tracey,* 675 F.2d 433, 437 (1st Cir.1982). If the limitations imposed upon cross-examination inhibit the ability of the accused to obtain a fair trial, the rule which vests the court with discretion to disallow questions on cross-examination is "manifestly inapplicable." *State v. Cox,* 298 Md. 173, 183, 468 A.2d 319 (1983), quoting *DeLilly v. State,* 11 Md.App. 676, 681, 276 A.2d 417 (1971); *Lewis v. State, supra,* 71 Md.App. at 410, 526 A.2d 66.

In *Johnson and Walters v. State,* 30 Md.App. 512, 516–17, 352 A.2d 371 (1975), *cert. denied,* 278 Md. 735 (1976), Judge Lowe, speaking for this Court, examined the constraint that the Confrontation Clause places upon a trial judge's discretion to limit cross-examination about possible sources of motive or bias on the part of the witness:

> The test of admissibility, therefore, is whether the question asked is directed at eliciting from a prosecution witness the fact that he may be under pressure to testify favorably for the State, as when he is under formal accusation, and/or incarceration awaiting trial. We do

not mean to imply that any time a witness testifies against a criminal defendant his entire record of previous arrests becomes relevant to the inquiry. Only where there is some present possibility of coercion should such cross-examination be allowed.

We disagree with the State's contention that, in the case *sub judice*, no "present possibility of coercion" could have existed at the time Vanessa Coleman testified against appellants. Coleman was faced with pending charges at the time she first volunteered information to the police which implicated appellants in the theft of the office equipment store. Although the charges were disposed of via *nolle prosequi* prior to appellants' trial, the State could have prosecuted Coleman for the same offense under a new charging document if she refused to repeat her inculpatory statements at trial. *Ward v. State,* 290 Md. 76, 84, 427 A.2d 1008 (1981). The fact that she was subject to prosecution for the offense may well have motivated Coleman to testify against appellants. Several courts in our sister jurisdictions have held that a trial court abused its discretion by limiting cross-examination of a prosecution witness concerning the fact that charges against the witness had been *nolle prossed* or dismissed prior to trial, *e.g., State v. Torres,* 97 Ariz. 364, 400 P.2d 843, 845 (1965); *State v. Anonymous (1977-4),* 34 Conn.Supp. 527, 374 A.2d 568, 569 (1977); *Benjamin v. United States,* 453 A.2d 810, 812 (D.C.App. 1982); *Clark v. Commonwealth,* 386 S.W.2d 458, 461–62 (Ky.1965); *State v. Roberson,* 215 N.C. 784, 3 S.E.2d 277, 280 (1939); *Simmons v. State,* 548 S.W.2d 386, 388 (Tex.Cr. App.1977).

Appellants were not required, as a prerequisite to the relevance of cross-examination of Vanessa Coleman as to the circumstances under which she implicated appellants, to present evidence pointing to the existence of an agreement between Coleman and the police in return for her testimony. For purposes of cross-examination of a prosecution witness in order to show bias or motive,

[T]he crux of the inquiry insofar as its relevance is concerned, is the witness's state of mind. What is essential to the preservation of the right to cross-examine is that the interrogator be permitted to probe into whether the witness is acting under a hope or belief of leniency or reward.

*Fletcher v. State,* 50 Md.App. 349, 359, 437 A.2d 901 (1981). Even though the officers responsible for the prosecution of Coleman for the theft from the jewelry store testified at the hearing on the State's motion *in limine* that they did not offer Coleman any leniency in exchange for her testimony,

[W]hat is crucial is not the government's understanding of what it is offering in exchange for the testimony. Nor is it what the common law's "reasonable man" might understand an immunity letter to grant. The vital question, which the defendant is constitutionally entitled to explore by cross-examination, is what the *witness* understands he or she will receive, for it is this understanding which is of probative value on the issue of bias. The likelihood that a prosecution witness is shading or even contriving testimony adverse to the defendant reasonably can be viewed as directly correlated with the perceived value of such testimony to the witness.

*Hoover v. State of Maryland, supra* 714 F.2d at 305. *See also United States v. Onori,* 535 F.2d 938, 945 (5th Cir. 1976) ("[w]hat tells, of course, is not the actual existence of a deal but the witness' belief or disbelief that a deal exists").

█ Vanessa Coleman's testimony was the only direct evidence offered at trial to establish that appellants committed the theft from the office equipment store. The fundamental importance of cross-examination to test the credibility of a witness is especially keen where the weight of the State's case rests exclusively upon the testimony of the witness cross-examined. *Lewis v. State, supra,* 71 Md.App. at 412, 526 A.2d 66. Because the court denied appellants the opportunity to place the sole testimony which incriminated them in its proper setting in an attempt to demon-

strate that the witness possessed a motive to give false testimony, appellants were denied the effective cross-examination that the Confrontation Clause guarantees them. The trial court abused its discretion in precluding this cross-examination.

We cannot say that the court's error was harmless beyond a reasonable doubt. *Delaware v. Van Arsdall, supra*, 475 U.S. at 684, 106 S.Ct. at 1438, 89 L.Ed.2d at 686; *Dorsey v. State*, 276 Md. 638, 659, 350 A.2d 665 (1976). The testimony of Vanessa Coleman was essential to the successful prosecution of the appellants; the issue of her credibility was therefore crucial to the jury's determination of appellant's guilt. *Lewis v. State, supra*, 71 Md.App. at 416–17, 526 A.2d 66. We shall accordingly reverse and remand for a new trial.

JUDGMENTS REVERSED; CASE REMANDED FOR A NEW TRIAL; COSTS TO BE PAID BY ANNE ARUNDEL COUNTY.