695 A.2d 184

Harold Louis MARSHALL

v.

STATE of Maryland.

No. 75, Sept. Term, 1996.

Court of Appeals of Maryland.

June 20, 1997.

Fred R. Joseph (Joseph, Greenwald & Laake, P.A., on brief), Greenbelt, for Petitioner.

Mary Ann Ince, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on brief), Baltimore, for Respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, RAKER and WILNER, JJ.

RAKER, Judge.

The issue we must decide in this case is whether the trial judge unduly restricted the cross-examination of the State's key witness regarding a plea and pending sentence in an unrelated criminal case, where the witness's testimony against the defendant was a requirement of the witness's plea. We shall hold that the limitation of the cross-examination was a violation of the Confrontation Clause of the Sixth Amendment

of the United States Constitution and Article 21 of the Maryland Declaration of Rights and that the error was not harmless beyond a reasonable doubt.

I.

On May 30, 1993, the victim, Nathaniel New, was wounded on a street corner in Prince George's County; he died as a result of the gunshot wound on November 3, 1993. At the crime scene, police officers saw several men present, but only one person, a seventeen-year-old named Barry Edwards, remained to speak with them. Edwards, initially identifying himself as Barry Smith, but later providing his correct name, told police that he saw a black car drive up and turn around, that he heard gunshots, and that New was shot in the back while leaving the scene. On June 3, 1993, during Edwards's second police interview, he told police for the first time that Petitioner, Harold Marshall, was the person who shot Mr. New. He told the police that he initially gave his last name as Smith because he "didn't want to be bothered" and because he was scared.

In August, 1993, after the shooting and before Petitioner's trial, Edwards was involved in an unrelated incident and was indicted by a grand jury for either assault with intent to murder or assault with intent to maim.[1] As a result of a plea agreement, Edwards entered an *Alford* plea to the reduced charge of reckless endangerment.[2] *See* Maryland Code (1957, 1996 Repl.Vol.) Art. 27, § 12A–2. As a condition of the plea, Edwards agreed to testify on behalf of the State at Petition-

---

1. The record is unclear as to whether Edwards had been indicted for assault with intent to murder or assault with intent to maim.

2. In *Pennington v. State*, 308 Md. 727, 728 n. 1, 521 A.2d 1216, 1216 n. 1 (1987), we defined an *"Alford"* plea as a "guilty plea containing a protestation of innocence." *See North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); *see also* Maryland Rule 4–242(c) (court may accept plea of guilty even though defendant does not admit guilt).

er's trial. At the time of Petitioner's trial, Edwards had not been sentenced on the reckless endangerment charge.

At Petitioner's trial, Edwards was the State's sole eyewitness. Edwards testified that Marshall was the person he saw in the black car, and that he observed Marshall exit the car, approach Mr. New, argue with him, and then pull out a handgun from under his shirt, shoot Mr. New and return to the black car and drive away.

The State filed a motion *in limine*, seeking to preclude defense counsel from questioning Edwards about his guilty plea. The court held a hearing on the motion prior to opening statements. At the hearing, all parties acknowledged that Edwards's testimony at Petitioner's trial was a mandatory condition of his plea agreement, although this requirement had not been authorized by the prosecutor in the Marshall case, or even communicated to her.

Defense counsel argued that it was necessary to cross-examine Edwards about his plea agreement with the State to expose his motive for testifying on behalf of the State.[3] The trial court granted the State's motion *in limine* on the grounds that first, the plea was not yet a final conviction,[4] and

---

3. At the hearing on the motion *in limine*, defense counsel told the court that he did not

 want to cross-examine [Edwards] in terms of specific plea agreement, but I do want to cross-examine him concerning his behavior, his motivations for testifying. He has not been sentenced as of this point. I am not attempting to impeach him by the use of an arrest or a plea which has not been sentenced, but I am attempting to attack his credibility and I believe that it's appropriate for me to ask him questions in that regard, concerning his own behavior and any motivation he may have to testify in connection with this particular case.

4. The circuit court was certainly correct in concluding that the conviction was not a final conviction that could be used to attack Edwards's credibility under Maryland Rule 5–609. Although correct, it has no bearing on the issue in the instant case, because Petitioner was not attempting to use the pending charge as a general attack on credibility. Instead, he was attempting to expose Edwards's possible bias or ulterior motive. *See Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 353–54 (1974) (distinguishing use of prior criminal

second, that it was inappropriate to inquire into a plea of guilty in an unrelated case.

Petitioner was convicted of first degree murder and use of a handgun in the commission of a crime of violence. On the murder conviction, he was sentenced to life imprisonment, and on the handgun conviction, he was sentenced to ten years in prison, to be served concurrent with the murder sentence.

Petitioner appealed to the Court of Special Appeals and in an unreported opinion, a divided panel affirmed the convictions. The intermediate appellate court held that the witness's plea in an unrelated case was a collateral matter and therefore irrelevant to any issue in Marshall's case. The court held that the trial judge did not abuse his discretion in limiting defense counsel's cross-examination. The intermediate appellate court then added that, in any case, "any limitation, to the extent it can be characterized as such, ... was ... harmless." Chief Judge Joseph F. Murphy, Jr. dissented. He concluded that Petitioner had a constitutional right to inform the jury that Edwards, a key prosecution witness, had a strong motive to falsify because, in an unrelated criminal proceeding, 1) he had entered into a plea agreement which required that he testify against Petitioner in the case *sub judice* and 2) he was awaiting sentencing in that proceeding at the time of his testimony. In addition, Chief Judge Murphy concluded that the error was not harmless.

Marshall filed a petition for writ of certiorari, which this Court granted. *Marshall v. State,* 343 Md. 566, 683 A.2d 178 (1996). In the interim, this Court decided the case of *Ebb v. State,* 341 Md. 578, 671 A.2d 974 (1996), wherein we considered whether the trial court abused its discretion by precluding cross-examination of a State's witness concerning pending criminal charges. Because there was no offer of leniency and

---

conviction for general credibility attack from more particular attack to provide jury a basis to infer that witness would be less likely to tell the truth by providing possible ulterior motive, bias or prejudice of witness); *see also State v. Cox,* 298 Md. 173, 178, 468 A.2d 319, 321 (1983) (same).

no basis to infer an expectation of leniency, we held in *Ebb* that the trial court did not abuse its discretion in precluding cross-examination on the pending criminal charges. *Id.* at 591, 671 A.2d at 980. We summarily vacated the judgment of the Court of Special Appeals in *Marshall v. State*, 341 Md. 605, 671 A.2d 987 (1996), with directions for that court to reconsider the case in light of *Ebb*. On remand, the Court of Special Appeals, in a unanimous opinion, affirmed. Marshall again filed a petition for writ of certiorari, which we granted to consider whether denying a defendant the opportunity to cross-examine a State witness regarding a plea and pending sentencing in an unrelated criminal case, where the witness's testimony is a condition of the witness's plea agreement, is violative of the Confrontation Clause of the Sixth Amendment and Article 21 of the Maryland Declaration of Rights.

## II.

■ The Confrontation Clause of the Sixth Amendment guarantees an accused in a criminal proceeding the right "to be confronted with the witnesses against him." *Delaware v. Van Arsdall*, 475 U.S. 673, 678, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674, 683 (1986). This right means more than simply confronting the witness physically. *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 353 (1974). This same right is guaranteed to a criminal defendant by Article 21 of the Maryland Declaration of Rights. *Simmons v. State*, 333 Md. 547, 555–56, 636 A.2d 463, 467, *cert. denied*, 513 U.S. 815, 115 S.Ct. 70, 130 L.Ed.2d 26 (1994). The constitutional right of confrontation includes the right to cross-examine a witness about matters which affect the witness's bias, interest or motive to testify falsely. *Ebb*, 341 Md. at 587, 671 A.2d at 978. An attack on the witness's credibility "is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand." *Davis*, 415 U.S. at 316, 94 S.Ct. at 1110, 39 L.Ed.2d at 354. The Supreme Court recognized in *Davis* that "the exposure of a witness' motivation in testifying is a proper and

important function of the constitutionally protected right of cross-examination." *Id.* at 316–17, 94 S.Ct. at 1110, 39 L.Ed.2d at 354; *see Smallwood v. State,* 320 Md. 300, 306, 577 A.2d 356, 359 (1990). Commenting on the importance of cross-examination concerning motive to falsify, Chief Judge Joseph F. Murphy, Jr., in his treatise *Maryland Evidence Handbook,* observed that "[t]his is the most important impeachment technique because 'even an untruthful man will not usually lie without a motive.' " J. Murphy, *Maryland Evidence Handbook* § 1302(E), at 662 (2d ed.1993) (quoting *Gates v. Kelley,* 15 N.D. 639, 110 N.W. 770, 773 (1907)).

■■■ The right to cross-examination, however, is not without limits. *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674, 683 (1986); *Smallwood,* 320 Md. at 307, 577 A.2d at 359. The trial judge retains discretion to impose reasonable limits on cross-examination to protect witness safety or to prevent harassment, prejudice, confusion of the issues, or inquiry that is repetitive or marginally relevant. *Van Arsdall,* 475 U.S. at 679, 106 S.Ct. at 1435, 89 L.Ed.2d at 683; *Smallwood,* 320 Md. at 307, 577 A.2d at 359. Although the scope of cross-examination is within the discretion of the trial judge, that discretion may not be exercised "until the constitutionally required threshold level of inquiry has been afforded the defendant" to satisfy the Sixth Amendment. *Brown v. State,* 74 Md.App. 414, 419, 538 A.2d 317, 319 (1988); *see Smallwood,* 320 Md. at 307, 577 A.2d at 359; *United States v. Landerman,* 109 F.3d 1053, 1061 (5th Cir. 1997); *United States v. Restivo,* 8 F.3d 274, 278 (5th Cir.1993), *cert. denied,* 513 U.S. 807, 115 S.Ct. 54, 130 L.Ed.2d 13 (1994); *United States v. Christian,* 786 F.2d 203, 213 (6th Cir.1986); *Hoover v. Maryland,* 714 F.2d 301, 305 (4th Cir.1983); *United States v. Tracey,* 675 F.2d 433, 437 (1st Cir.1982). "The Confrontation Clause of the Sixth Amendment is satisfied where defense counsel has been 'permitted to expose to the jury the facts from which jurors, as the sole triers of fact and of credibility, could appropriately draw inferences relating to the reliability of the witness.' " *Restivo,* 8 F.3d at 278 (quoting *Davis v. Alaska,* 415 U.S. 308, 318, 94 S.Ct. 1105, 1111, 39

L.Ed.2d 347, 355 (1974)). The trial court's discretion to limit cross-examination is not boundless. It has no discretion to limit cross-examination to such an extent as to deprive the accused of a fair trial. *See State v. Cox,* 298 Md. 173, 183, 468 A.2d 319, 324 (1983). In assessing whether the trial court has abused its discretion in the limitation of cross-examination of a State's witness,

> the test is whether the jury was already in possession of sufficient information to make a discriminating appraisal of the particular witness's possible motives for testifying falsely in favor of the government.

*United States v. Christian,* 786 F.2d 203, 213 (6th Cir.1986) (quoting *United States v. Singh,* 628 F.2d 758, 763 (2d Cir.), *cert. denied,* 449 U.S. 1034, 101 S.Ct. 609, 66 L.Ed.2d 496 (1980)).

In *Smallwood v. State,* 320 Md. 300, 577 A.2d 356 (1990), we had occasion to consider the trial judge's limitation on cross-examination regarding the outcome of unrelated charges lodged by the witness against the defendant. We held that the trial court committed reversible error in prohibiting cross-examination on this point because the proposed questions were intended to uncover prejudice and bias on the part of the witness. The defendant in that case was attempting to demonstrate to the jury that the witness's motivation for her testimony in the case before the court stemmed from her failure to obtain convictions in the previous cases she had brought against the defendant. The defendant claimed that it was the witness's vindictiveness which caused her to testify against him and that he had a right to demonstrate this prejudice to the jury in order for the jury to assess her testimony accurately. *Id.* at 304, 577 A.2d at 358. Judge Cole, writing for this Court, observed that, following the Supreme Court decisions of *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), and *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), "there has evolved a standard analytical framework for Maryland courts to follow when confronted with this situation."

*Smallwood,* 320 Md. at 306, 577 A.2d at 359. Judge Cole wrote:

> The right to cross-examine is not without limits, however, and "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Limitation of cross-examination should not occur, however, until after the defendant has reached his "constitutionally required threshold level of inquiry." Stated another way, although the scope of cross-examination is generally limited to the subjects raised on direct examination, within that limit a defendant should be free to cross-examine in order to elucidate, modify, explain, contradict, or rebut testimony given in chief. It is also proper to cross-examine as to facts or circumstances inconsistent with testimony and to bring out the relevant remainder or whole of any conversation, transaction, or statement brought out on direct questioning. Finally, and particularly pertinent to the instant case, one should be allowed to cross-examine in order to determine the reasons for acts or statements referred to on direct examination.

> What emerges from this review of the applicable caselaw is a balancing test. A judge must allow a defendant wide latitude to cross-examine a witness as to bias or prejudices, but the questioning must not be allowed to stray into collateral matters which would obscure the trial issues and lead to the factfinder's confusion.

*Id.* at 307–08, 577 A.2d at 359 (citations omitted).

In *Watkins v. State,* 328 Md. 95, 613 A.2d 379 (1992), we again had occasion to consider whether the trial judge improperly restricted the cross-examination of a witness. In that case, the issue we addressed was whether a defendant may cross-examine a State's witness about potential bias or interest in the State's favor when the questions pertain to the

witness's probationary status arising out of an unrelated case.[5] *Id.* at 100, 613 A.2d at 381. Watkins argued that *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), compels the admission of evidence that any State's witness is on probation for a crime, if that evidence is offered by the defendant. *Watkins,* 328 Md. at 100, 613 A.2d at 381. We rejected Watkins's argument, and held that the trial judge did not abuse his discretion in excluding the testimony. *Id.* at 103, 613 A.2d at 383.

In *Ebb v. State,* 341 Md. 578, 671 A.2d 974 (1996), this Court was called upon to determine whether the trial judge abused his discretion by precluding cross-examination of two State witnesses regarding unrelated pending criminal charges. The trial judge held a hearing outside of the presence of the jury, where the witnesses testified that they were not offered any leniency in exchange for their testimony, they did not expect any leniency or benefit in return for their testimony, and there was no basis for any expectation of leniency.[6] The judge concluded that "based on the denial of the witnesses and the uncontroverted representation of the prosecutor that there was no offer of leniency, there was a complete lack of probative value or that the value for impeachment was so slight as to be overcome by the probability that the testimony would be unduly prejudicial or confusing to the jury." *Id.* at 591, 671 A.2d at 980. This Court affirmed the decision of the trial court. We held:

---

5. Defense counsel also sought to cross-examine a State's witness about a pending theft charge. That issue was not decided in *Watkins* because we held that the issue was not properly before the Court. Defense counsel had accepted the prosecutor's statement that no "deal" had been made with the witness, and thus acquiesced in the trial court's ruling. *Watkins v. State,* 328 Md. 95, 99–100, 613 A.2d 379, 381 (1992).

6. The trial court, however, permitted cross-examination of a third State witness regarding a pending violation of probation charge. Although the witness was not promised leniency in exchange for his testimony, he nonetheless testified that he believed that he would receive lenient treatment, and, therefore, the court permitted the cross-examination. *Ebb v. State,* 341 Md. 578, 585, 671 A.2d 974, 977 (1996).

Under the circumstances of this case, and particularly because the witnesses testified unequivocally that they expected no benefit from their testimony, *and there was no basis to infer an expectation of any benefit,* we hold that the trial judge did not abuse his discretion in excluding the evidence and in finding that the fact that charges were pending had little or no probative force.

*Id.,* 671 A.2d at 980 (emphasis added). Of particular significance in *Ebb* was the highlighted portion of the above-quoted passage, *i.e.,* that "there was no basis to infer an expectation of any benefit" to the witnesses. In *Ebb,* there was no "deal"—no agreement between the State and the witnesses with regard to their testimony at Ebb's trial.

 Turning to the case at hand, we conclude that the trial judge erred in limiting the cross-examination of Edwards. Petitioner was prohibited from asking the witness any questions about the terms of his plea agreement, and although the trial judge said defense counsel could ask about motive, the offer was, in reality, a hollow gesture.[7] Where a witness has a "deal" with the State, the jury is entitled to know the terms of the agreement and to assess whether the "deal" would reason-

---

7. The trial judge, in restricting the cross-examination, stated:

I'm not going to restrict you as far as relevance, I'm not going to restrict you as far as motive. But to that extent, I'm not going to permit you to bring out . . . his plea in front of the jury.

The Supreme Court, in *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), addressed the appropriate scope of cross-examination and concluded:

While counsel was permitted to ask [the witness] *whether* he was biased, counsel was unable to make a record from which to argue *why* [the witness] might have been biased or otherwise lacked the degree of impartiality expected of a witness at trial. On the basis of the limited cross-examination that was permitted, the jury might well have thought that defense counsel was engaged in a speculative and baseless line of attack on the credibility of an apparently blameless witness.

*Id.* at 318, 94 S.Ct. at 1111, 39 L.Ed.2d at 355 (emphasis in original). Likewise, under the trial court's offer in this case, defense counsel's inquiries into whether Edwards had a motive to falsify or harbored any bias might appear to be "speculative and baseless" taken out of the context of Edwards's plea agreement with the State.

ably tend to indicate that his testimony has been influenced by bias or motive to testify falsely. Under similar circumstances, our sister jurisdictions have likewise held that it is error for a trial court to limit the cross-examination of a state's witness where there has been an understanding, a promise of leniency or an offer of any *quid pro quo* extended to a witness prior to trial. *See, e.g., State v. Anonymous (1977-4),* 34 Conn.Supp. 527, 374 A.2d 568, 569 (1977); *Watts v. State,* 450 So.2d 265, 268 (Fla.Dist.Ct.App.1984); *Williams v. Commonwealth,* 569 S.W.2d 139, 145 (Ky.1978); *State v. Roberson,* 215 N.C. 784, 3 S.E.2d 277, 280 (1939); *People v. Leonard,* 58 A.D.2d 1018, 396 N.Y.S.2d 956 (1977); *Randle v. State,* 565 S.W.2d 927, 931 (Tex.Crim.App.1978).

Petitioner sought to show that Edwards, a principal witness for the State, was required to testify against Petitioner as part of his plea agreement in a pending unrelated case and that Edwards had not yet been sentenced in that pending matter. While these facts in themselves do not necessarily prove that the witness was unworthy of belief, Petitioner had a right to have the jury informed of these matters and to permit the jury to determine whether the witness testified in the reasonable expectation that he would receive leniency in return for testimony against Petitioner and that his testimony, by reason thereof, was unworthy of belief. Denial of effective cross-examination, in these circumstances, constitutes error requiring reversal unless the error is harmless beyond a reasonable doubt. *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674, 686 (1986); *Smallwood v. State,* 320 Md. 300, 308, 577 A.2d 356, 359 (1990).

The State argues before this Court that the error, if there be error, was harmless. We disagree. Defense counsel attempted to show the existence of Edwards's bias or possible motive causing him to change his testimony and to implicate Petitioner in the murder. The jurors were entitled to hear this evidence to enable them to make an informed judgment as to what weight, if any, to place on the testimony of Edwards, the State's only eyewitness linking Petitioner to the murder.

Inasmuch as we conclude that defense counsel was denied the opportunity to cross-examine Edwards, a key prosecution witness, about the condition of Edwards's plea agreement that he testify at Petitioner's trial, and that agreement was not otherwise made known to the jury, we conclude that the jury lacked the opportunity to properly assess Edwards's testimonial motivation or potential bias. The issue of Edwards's credibility was crucial to the jury's determination of Petitioner's guilt.[8] Because the jury was not provided with sufficient information to make a discriminating appraisal of Edwards's possible motives for testifying falsely or coloring his testimony in favor of the State, we cannot say that the trial court's error was harmless beyond a reasonable doubt. *See Delaware v. Van Arsdall,* 475 U.S. at 684, 106 S.Ct. at 1438, 89 L.Ed.2d at 686; *Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665, 678 (1976).

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT*

---

**8.** The importance of Edwards's testimony was underscored by the State's opening statement. The prosecutor told the jury:

[Edwards is] the only eyewitness, and I'm going to let you know that right now, up front. However, he's a very credible witness. And quite frankly, Mr. Edwards is to be commended for coming forward and for being somewhat of a hero in the State's mind.

The prosecutor returned to the subject of Edwards's credibility in her closing argument:

[Edwards] was asked every question on cross-examination by the defense which ranged from have you ever used marijuana in the past to, well, you must have some sort of animosity or bad feeling for this defendant. He was grilled on that stand and he still remained a cool, calm, and intelligent and honest witness. Barry Edwards had no reason to lie. He didn't have reason to lie about any of this.

Edwards's credibility and motive to lie were again discussed in the prosecutor's rebuttal closing argument:

[H]e talked about motive to lie. [Defense counsel] is absolutely correct. He can't find one reason why Barry Edwards would have to lie and I thought, too, there was no reason why Barry Edwards would have to lie. But yet and still even though the defense can show you no reason why Barry Edwards would have to lie about any of this, he still says, well, perhaps Barry Edwards was somehow involved in this.

*OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AND REMAND THE CASE TO THAT COURT FOR A NEW TRIAL. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PRINCE GEORGE'S COUNTY.*